IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| JOHN A. MULVEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No.: |
| vs. ) | |
| ) | JUDGE _____ |
| THOMAS E. PEREZ, Secretary of ) | |
| Labor; United States Department of ) | |
| Labor, ) | |
| ) | MAGISTRATE_____ |
| Defendant. ) | JURY DEMANDED |

**COMPLAINT**

Comes now the plaintiff, JOHN A. MULVEY, and for complaint against the defendant complains as follows:

**NATURE OF ACTION**

1. Plaintiff JOHN A. MULVEY brings this cause of action pursuant to Title VII of the Civil Rights Acts of 1964, as amended (42 U.S.C. Section 2000(e) *et seq.*), for retaliation; the Rehabilitation Act of 1973, 29 U.S.C. § 794 et seq., for disability discrimination, harassment, hostile work environment, and retaliation; the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. §2601, et seq.; the Fair Labor Standards Act (FLSA) 29 U.S.C. § 2115 (a)(3), for retaliation and the Privacy Act of 1974, 5 U.S.C. §552 (a) et seq.

1

## PARTIES

2. The plaintiff, JOHN A. MULVEY, was at all times relevant a citizen and resident of Nashville, Davidson County, Tennessee.

3. The Department of Labor is a governmental agency of the United States of America. The proper party for service of process against the Department of the Labor is the head of said federal department, which currently is believed to be, Thomas E. Perez, the Secretary of Labor[1]. Service of process is to be had upon the following individuals pursuant to Rule 4 (I) of the Federal Rules of Civil Procedure:

   a) United States Attorney for the Middle District of Tennessee, David Rivera, 110 9th Ave., Suite A-961, Nashville, Tennessee, 37203;

   b) Attorney General of the United States, Eric Holder, 950 Pennsylvania Avenue, NW, Washington, D.C. 20530-0001;

   c) Secretary of Labor, Thomas E. Perez, 200 Constitution Avenue, N.W., Francis Perkins Building, Washington, D.C. 20210.

## VENUE

---

[1] Secretary Hilda Solis resigned from her post as Secretary of Labor, on or about January 22, 2013. Pursuant to the automatic substitution mechanism set out in the Federal Rules of Civil Procedure, Rule 25 (d). Secretary Perez is now the proper party-defendant.

5. Venue is proper pursuant to 28 U.S.C. § 1391(b)(e), as many of the acts, events and omissions giving rise to this Complaint occurred within the Middle District of Tennessee.

**ADMINISTRATIVE HISTORY**

6. Plaintiff filed a Formal Charges of Discrimination with the Department of Labor on or about January 17, 2012, and a Charge of Discrimination with the EEOC on March 1, 2013, (Case Number 490-2013-00081X). The initial 180 calender day period for investigation has ended and a Final Agency Decisions has not been received. Thus, this action may now be brought before the Court.

**FACTUAL ALLEGATIONS**

7. Plaintiff John A. Mulvey began his career with the Department of Labor as a paralegal specialist on April 13, 1999. As a paralegal specialist, Plaintiff's duties included reviewing Federal Black Lung claims, and work under the Longshore Harbor Workers Compensation Act claims and cases arising under the Mine Safety and Health Act (MSHA) cases. Plaintiff had exemplary evaluations during his employment until the acts which are the subject of this action arose.

8. Plaintiff is an individual with permanent medical conditions for which he was undergoing medical care and treatment throughout the relevant time period.

9. On or about August 10, 2011, Plaintiff gave testimony pertaining to a sexual harassment investigation involving a Department of Labor Attorney, Thomas A. Grooms, to DOL Atlanta Investigator, Charles Collins, Jr.

10. Thereafter, Plaintiff first suffered retaliation when the agency refused to pay Plaintiff overtime for work he performed during the congressionally funded MSHA Project under Backlog Project Manager and Attorney Thomas A. Grooms. Plaintiff had to file suit to obtain the wages he was justly due, 68 hours of pay, totaling ($3,766). ***Mulvey v. Solis, Case No. 3:12-cv-01037***. After Plaintiff obtained counsel, the case was resolved for ($10,500).

11. Thereafter, while Plaintiff was on medical leave he received a package from the Office of the Solicitor, United States Department of Labor, on or about October 6, 2011, only 56 days after he exercised his protected activity of giving sworn testimony in the EEO matter. Plaintiff believed he was opening a get-well card from his office and was shocked to find a performance evaluation wherein he was rated as only "minimally satisfactory for FY 2011". Plaintiff was shocked at the evaluation as Plaintiff's mid-year evaluation had been to keep up the good work. The very items he was rated low on were the items he received an award for in August! Since Plaintiff was on medical leave he requested to be allowed to provide a written

4

rebuttal to the rating and was denied the right to do so by his supervisor.

12. On August 22, 2011, Plaintiff received an e-mail from Stanley E. Keen, Atlanta Regional Solicitor, notifying Plaintiff that he would be receiving a $300 bonus for an Instant Good Job Award for his hard work on the global MSHA settlement.

13. On August 28, 2011, Stanley Keen provided Plaintiff with a copy of the Special Award memorandum prepared by Attorney Thomas A. Grooms dated August 5, 2011, wherein Plaintiff is praised by Attorney Grooms for his hard work, successful work and his assistance in saving the government well over $500,000 in the collection of civil money penalties.

14. On August 24, 2011, Plaintiff received an e-mail from his supervisor, Theresa Ball, terminating his work on the MSHA Backlog Project.

15. On November 7, 2011, Plaintiff returned to work with restrictions. Plaintiff advised his supervisor of an upcoming physician appointment and requested time off to go to such. Plaintiff's supervisor, accused Plaintiff of submitting a late request, however, the computer documentation showed that this was an untrue accusation.

16. On November 8, 2011, Plaintiff's supervisor, Theresa Ball accused Plaintiff of using profanity at a Nashville MSHA Settlement conference in June of 2011. These allegations were, again, false. Ball also advised Plaintiff that Grooms punishment

was "going to be severe and substantial".

17. On November 10, 2011, Plaintiff notified his supervisor, Theresa Ball, that he was having continued vision problems, blurring, reading difficulty, loss of concentration and anxiety, and that due to his eye condition it was going to take longer to respond to the MSHA and Black Lung Case files. Plaintiff requested any suggestions or recommendations his supervisor may have. In the middle of November of 2011, after a meeting in the office of Pam Reedus, wherein the issue of Plaintiff's difficulty with overhead lighting was discussed, Ball agreed for the DOL to purchase a single bulb lamp for the plaintiff to use in lieu of florescent overhead lighting.

18. On or about May 11, 2012, Ball again made false accusations against Plaintiff, this time that he called MSHA Back Log Staff "trailer trash". According to Ball, such was confirmed by SOL Attorney Joe Luckett. During this same review, Plaintiff advised Ball that his medical conditions were interfering with his work. However, Ball later accused Plaintiff of advising her that his medical conditions did not interfere with his work activities. Later, Ball also falsely sent Plaintiff an e-mail accusing him of admitting that he had called certain staff trailer trash and that he had good reason for saying such.

19. On or about May 17, 2012, Plaintiff sought reasonable accommodation from Ball in the form of moving to another office upon the departure of Brian Winfrey from said office. Plaintiff

requested this office as it was becoming vacant, and was quieter as compared to the high volume of traffic Plaintiff was constantly subjected to. Initially Ball ignored the request, but later Ball denied the request.

20. Previously, employee Dieu had been allowed to change offices to accommodate her medical needs.

21. On June 9, 2012, Plaintiff submitted a request for reasonable accommodations. On June 15, 2012, Ball came to Plaintiff's office, and stood in the doorway with his office door open and began addressing Plaintiff's physical disabilities and requested accommodations for all to hear. Ball repeatedly refused to engage n the interactive process with Plaintiff regarding his request seeking reasonable accommodations.

22. On June 21, 2012, Ball falsely accused Plaintiff, again, of making insulting comments about staff and now, even Ball. Ball also falsely stated that she and the MSHA counsel had tried to coach Plaintiff but he had a negative attitude.

23. On June 28, 2012, Ball provided Plaintiff with a Proposed Performance Improvement Plan (PIP). However, she refused to discuss any specifics with Plaintiff. The PIP was vague and there were no specifics for how Plaintiff was not performing his job properly nor expectations for how Plaintiff was to improve or any measurements for Plaintiff to go by. On July 10, 2012, Ball implemented the PIP.

24. Thereafter, Ball began to accuse Plaintiff of taking

unauthorized time off from work even though Plaintiff continued to apprise Ball of his medical appointments and limitations.

25.  On September 24, 2012, Ball issued a Notice of Proposed Five (5) Day Suspension to Plaintiff because of inappropriate behavior and failure to follow supervisory instructions. Ball this time accused Plaintiff of failing to follow his physician's restrictions when he was observed pulling a two-wheel cart with his left hand. Ball refused to listen to Plaintiff that the physician's restrictions were for the right hand and arm. Plaintiff was subsequently suspended for five (5) days.

26.  Ball continued with a pattern of harassing and discriminating behavior, not limited to the above incidents, that also included such acts as making false accusations about Ball's instructions to Plaintiff; deleting Plaintiff's e-mails without opening them, refusing to answer Plaintiff's messages, refusing to discuss a complex file with Plaintiff, sending Plaintiff's medical condition and medical records to those who did not have a need to know of such issues, placing Plaintiff's confidential information in the office where others could read such, requiring Plaintiff to notify others in the office of with detailed information of why he needed to be away form the office for EEO matters.

27. Because of Ball's actions, Plaintiff has suffered greatly. Plaintiff has lost wages, suffered emotional distress, embarrassment, mental anguish, and loss of enjoyment of life.

## COUNT 1

### TITLE VII OF THE CIVIL RIGHTS ACT

28. Plaintiff incorporates paragraphs one (1) through twenty-seven (27) as if fully setforth herein verbatim.

29. Plaintiff alleges that he is an individual who engaged in protected activity under Title VII of the Civil Rights Act of 1964, as amended, in that he provided testimony in an internal agency EEO sexual harassment investigation of August 10, 2011, against Supervisor Thomas A. Grooms, when Plaintiff filed his own EEO complaint of discrimination in 2011, and by continuously engaging in protected activity since said time.

30. Plaintiff further alleges that the defendant took materially adverse action against the plaintiff and a causal connection existed between Plaintiff's protected activity and the adverse action.

31. Such actions by the defendant are a violation of Title VII of the Civil Rights Act and caused great emotional pain, embarrassment and humiliation, lost wages and loss of enjoyment of life to Plaintiff.

## COUNT II

### REHABILITATION ACT OF 1973

32. Plaintiff incorporates paragraphs one (1) through thirty-one (31) as if fully setforth herein verbatim.

33. Plaintiff is an individual who suffers from Post Traumatic Stress disorder, Major Depression, Anxiety,

Blepharospasms, Hemifacial Spasms, Photophobia, Keratopathy, Dry Eye Syndrome, Medial/Lateral Epicondylitis, Migraine Headaches and skin conditions.

34. Plaintiff is an individual with an impairment as defined by the Americans With Disabilities Act, an individual with a record of having a disability pursuant to said Act and an individual regarded as having a disability under said Act. Since Plaintiff's employment with the agency in 1999, the agency through its management and human resources personnel, knew or had reason to know that Plaintiff was a service-connected disabled veteran with a ten point service preference.

35. Plaintiff's impairments interfere with the major life activities of seeing, performing manual tasks, lifting, reading, concentrating, thinking, sleeping and working.

36. Defendant discriminated against Plaintiff regarding his disabilities in violation of the Rehabilitation Act in the following ways:

    a. failing to reasonable accommodate Plaintiff's disabilities in denying Plaintiff to work from home as requested by his physician, denying Plaintiff to change office locations, denying Plaintiff a portable humidifier for Plaintiff's known eye and service-connected skin condition;

    b. by failing to engage in good faith efforts to reasonable accommodate Plaintiff's disabilities;

c. by subjecting Plaintiff to pervasive harassment, retaliation and a hostile work environment due to his disabilities and protected activities.

37. Such actions by the defendant are a violation of the Rehabilitation Act of 1973 and caused great emotional pain, embarrassment and humiliation, lost wages and loss of enjoyment of life to Plaintiff.

## COUNT III

## FAMILY MEDICAL LEAVE AND ACT OF 1993

38. Plaintiff incorporates paragraphs one (1) through thirty-seven (37) as if fully setforth herein verbatim.

39. Plaintiff was at all times relevant, an eligible employee within the meaning of the FMLA, as he was employed full-time with Defendant for at least twelve months and had performed at least 1250 hours of service with Defendant during the previous twelve month period. Plaintiff was entitled to leave under the FMLA as provided for in Section 102(a) of the Act, 29 U.S.C. §2612(a). Defendant is a covered employee under the Act.

40. On July 23, 2012, Plaintiff requested permission to exercise his rights under the FMLA for an upcoming surgery and recovery to his right elbow. Plaintiff had kept his employer advised of his medical problems with his right elbow since March of 2011.

41. On July 27, 2012, Ball notified Plaintiff that he had failed to provide 30 day advance notice of his intent to take

FMLA. Such was not true.

42. Defendant failed to provide Plaintiff with Notice of Employees' Rights under the FMLA, thus, preventing Plaintiff from asserting rights under the Act and making educated decisions and informed decisions about requesting leave regarding his major surgery. As an employer subject to the provisions of the Act, Defendant violated the provisions of Section 105 of the Act, by interfering with, discouraging, restraining and/or denying Plaintiff the exercise of, or the attempt to exercise, his lawful rights provided under the Act.

43. Defendant intentionally interfered with, restrained, and denied the exercise of Plaintiff's rights provided under the FMLA by refusing to grant Plaintiff leave and failing to provide required notice and instruction of applicable rights under the Act within the five (5) day time frame to an eligible employee prescribed by the DOL.

44. Defendant's actions were intentional as its agent, Theresa Ball, is the Nashville Associate Regional Solicitor of Labor for the Department of Labor, the very agency charged with the responsibility of enforcing and promulgating these laws.

45. Such actions by the defendant are a violation of the Family and Medical Leave Act and caused great emotional pain, embarrassment and humiliation, lost wages and loss of enjoyment of life to Plaintiff. Plaintiff also seeks liquidated damages under the Act.

## COUNT IV

## THE PRIVACY ACT

46. Plaintiff incorporates paragraphs one (1) through forty-five (45) as if fully setforth herein verbatim.

47. On September 20, 2012, Defendant through its agent, Theresa Ball, violated the Privacy Act of 1973 and DLMS - 5 Chapter 200, by knowingly and willfully disclosing Plaintiff's confidential medical information , to include a list of Plaintiff's confidential prescription medicines, to a non-management employee, the SOL Time Keeper, who did not have legal authority, or a need to know, and without the consent of Plaintiff.

48. Defendant is responsible for maintaining private medical records and information concerning Plaintiff as part of its Department of Labor official administrative duties, responsibilities and legal obligations.

49. Defendant also violated its own internal policy, The Privacy Act of 1974, (DLMS - 5 Chapter 200), by the hereinabove setforth disclosure.

50. The disclosure at issue was a record within the meaning of the Act as it was about an individual and contained the individual's name and/or identifying particular information.

51. Plaintiff alleges that such was an intentional violation of the Act made by a high ranking attorney within the Department of Labor who should have known of the Department's own

polices, rules and regulations.

 52. Such disclosure caused Plaintiff great embarrassment, humiliation, shame and emotional distress.

 53. Plaintiff seeks damages from Defendant to include but, not limited to, compensatory damages, lost wages and benefits, civil penalties, attorney fees and costs.

 WHEREFORE, PLAINTIFF John A. Mulvey prays for the following relief:

 A. That service of process issue as to the defendant as set forth in Rule 4 of the Federal Rules of Civil Procedure;

 B. That Plaintiff recover compensatory damages;

 C. That Plaintiff recover front pay and back pay;

 D. That Plaintiff recover prejudgment and post judgment interest;

 E. That Plaintiff recover liquidated damages;

 F. That Plaintiff recover civil penalties;

 G. That Plaintiff be awarded attorney fees and costs;

 H. That Plaintiff recover any and all damages to which he is entitled to under Title VII of the Civil Rights Act of 1964, as amended, The Rehabilitation Act of 1973, The Family Medical and Leave Act, the Privacy Act and the DOL Privacy Act of 1974;

 I. That Plaintiff's records be expunged of any and all negative, adverse and/or unfavorable notes, comments, memoranda, reports, files, records, and materials;

J. That the court award Plaintiff such other, further, general and different relief to which he may show himself entitled.

K. That a jury be empaneled to try this cause.

Respectfully submitted,

/s/ Debra A. Wall
DEBRA A. WALL, BPR #11331
Attorney for Plaintiff
133 Franklin Street
Clarksville, TN 37040
telephone: (931) 906-3904
facsimile: (931) 906-3908
e-mail: debraawall@msn.com