UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JOHN A. MULVEY,

    Plaintiff,                                  Civil Action No. 3:14-cv-01835

vs.                                         HON. BERNARD A. FRIEDMAN

EDWARD HUGLER,

    Defendant.
_____/

## OPINION AND ORDER GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is presently before the Court on defendant's motion for summary judgment [docket entry 65]. Plaintiff has filed a response in opposition and defendant has filed a reply. As the issues have been fully briefed, the Court shall decide the motion without a hearing.

This is an employment discrimination action. Plaintiff, a former paralegal employed by the Department of Labor ("DOL"), alleges that he was subjected to discrimination and a hostile work environment because of his disability, denied medical leave, and retaliated against, in violation of his rights under the Rehabilitation Act, Title VII, the Family and Medical Leave Act ("FMLA"), and the Fair Labor Standards Act ("FLSA"). Plaintiff also asserts a claim under the Privacy Act, based on the alleged disclosure of some of his medical information by one DOL employee to another. In a previous opinion and order, the Court dismissed plaintiff's FMLA and FLSA claims. In the instant motion, defendant seeks summary judgment on plaintiff's remaining claims.

Under Fed. R. Civ. P. 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "[T]he mere existence of *some* alleged factual dispute between the parties will not

defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* dispute as to any *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Viewing the evidence in the light most favorable to the opposing party, summary judgment may be granted only if the evidence is so one-sided that a reasonable fact-finder could not find for the opposing party. *See id.* at 248-50; *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478-80 (6th Cir. 1989). In other words, "[a] material issue of fact exists where a reasonable jury, viewing the evidence in the light most favorable to the non-moving party, could return a verdict for that party." *Vollrath v. Georgia-Pacific Corp.*, 899 F.2d 533, 534 (6th Cir. 1990). "The pivotal question is whether the party bearing the burden of proof has presented a jury question as to each element of its case." *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).

Plaintiff's Rehabilitation Act claim is that defendant denied his requests for workplace accommodations necessitated by his physical and mental impairments. Plaintiff's Title VII claim is that defendant took various adverse action against him, and created a hostile work environment, in retaliation for testifying against a supervisor in an internal DOL sexual harassment investigation. Plaintiff's Privacy Act claim is that his supervisor disclosed in an email to the office timekeeper that plaintiff was seeking leave due to side effects from two medications, and the medical condition and the medications were named in the email. Having reviewed the parties' briefs and voluminous exhibits, the Court concludes that defendant is entitled to summary judgment on these claims. The Rehabilitation Act claim fails because defendant actually granted a number of the accommodations plaintiff requested, and no reasonable jury could find that defendant violated plaintiff's rights in denying the remaining requests. The Title VII claim fails because no reasonable jury could find in plaintiff's favor that a hostile work environment existed or that defendant's

allegedly adverse actions were causally linked to his engagement in protected activity. And the Privacy Act claim fails because the email in question was not part of a "system of records" and because no reasonable jury could find that the disclosure of plaintiff's medical condition and medications was willful or intentional.

*Rehabilitation Act*

Defendant is entitled to summary judgment on plaintiff's Rehabilitation Act claim. The legal standards governing this claim are as follows:

> In order for a plaintiff to prevail on an allegation of handicap discrimination based on failure to accommodate, he must first establish a prima facie case by showing that: (1) he is an individual with a handicap as defined in 29 C.F.R. § 1614.203(a)(1); (2) he is qualified for the position as discussed in 29 U.S.C. § 1614.203(a)(6); (3) the agency was aware of his disability; (4) an accommodation was needed, i.e., a causal relationship existed between the disability and the request for accommodation; and (5) the agency failed to provide the necessary accommodation. Once the plaintiff has presented a prima facie case, the burden shifts to the employer to demonstrate that the employee cannot reasonably be accommodated, because the accommodation would impose an undue hardship on the operation of its programs. *Id*. at 883. If the plaintiff fails to establish a prima facie case, it is unnecessary to address the question of reasonable accommodation.

*Gaines v. Runyon*, 107 F.3d 1171, 1175–76 (6th Cir. 1997) (citation omitted). In the present case, the claim fails because defendant granted several of plaintiff's requested accommodations and plaintiff has failed to show that the accommodations defendant denied were necessary.

In June 2012, plaintiff requested the following accommodations: (1) that his computer monitor be positioned between 20 and 24 inches from his eyes; (2) that his keyboard and mouse "should be positioned in a constant L shape when typing"; (3) that his "computer monitor screen height be accurately positioned 5-15 degrees below horizontal line of sight"; (4) that he be provided

3

with "natural office lighting," not fluorescent lighting; (5) the he be provided with a portable humidifier; (6) that he be provided with a computer monitor with increased resolution; (7) that he be allowed to move to a quieter office; (8) that he be permitted to "work from home 3 days a week for a 60 day trial period"; and (9) that he be permitted to wear dark glasses "in all brightly lit fluorescent areas." Docket entry 79-7, PageID 1462. In response to these requests, plaintiff's supervisor, Theresa Ball, noted that the first, second, and third requests were within plaintiff's own control; that the fourth request had been granted by providing plaintiff with incandescent office lamps; and that the ninth request had been granted inasmuch as "you should continue to use your sunglasses . . . [as] you have done for several months." *Id.*, PageID 1460. Ball further noted that she had attempted to accommodate the sixth request by providing plaintiff with a larger, higher-resolution computer monitor, but that plaintiff had found the new monitor unsatisfactory and requested that the old monitor be brought back (and it was), and that "you never responded concerning any model you thought fit your needs." *Id.*

The remaining requested accommodations were for a portable humidifier, to change offices, and to work from home. These requests, along with whatever medical documentation plaintiff wished to present, were submitted to "the Civil Rights Center . . . for a medical assessment by [Federal Occupational Health]." *Id.*, PageID 1459-60. Dr. Neal Present, a consultant with FOH, reviewed the requests and letters from plaintiff's physicians. He also spoke with three of plaintiff's physicians. In his written report, Dr. Present concluded that "[t]he documentation supports [plaintiff's] working away from fluorescent lights and possibly wearing sunglasses at meetings if they are held under bright fluorescent lighting. I have no documentation that supports a portable humidifier, working in a quieter work area, or telework." *Id.*, PageID 1513-14. Ball denied these

4

three requested accommodations for the reasons cited by Dr. Present and, in addition, noted that the office plaintiff sought to occupy "was an attorney's office next to a very busy conference room frequented by groups of people engaged in group activities, training, and meetings regularly using audio and visual equipment." *Id.,* PageID 1461. Ball also noted that the office plaintiff currently occupied was, in fact, quieter than the one to which he requested to move.

In response to defendant's summary judgment motion as to this claim, plaintiff argues only that his request to telework was supported by the "[r]ecommendation by Deborah Sherman M.D. to work at home for trial period." Pl.'s Resp. Br. at 29, citing Attachment 35 to his declaration. However, Dr. Sherman, an ophthalmologist, did not recommend that plaintiff telework, but indicated only – in a letter post-dating Ball's decision by nine months – that it would be reasonable for him to do so "to see if this improves your symptoms." Docket entry 80-1, PageID 1711. The symptoms regarded plaintiff's "sensitivity to fluorescent lighting," *id.*, which had already been addressed by providing plaintiff with incandescent lighting in his office and allowing him to wear sunglasses. Far from recommending that plaintiff telework or suggesting that this requested accommodation was necessary, Dr. Sherman expressed skepticism that plaintiff's symptoms ("sensitivity to fluorescent lighting which is causing eye strain, blurred vision, loss of concentration/focus and frequent headaches") were related to the impairments for which she was treating him ("blepharospasm and hemifacial spasm"). She suggested plaintiff consult with a neurologist.

Plaintiff has essentially abandoned his "failure to accommodate" claim. He apparently concedes either that defendant granted his requested accommodations or that defendant legitimately concluded that the requests were not medically necessary, as he does not oppose defendant's motion as to eight of his nine requested accommodations. The only requested

accommodation plaintiff mentions in his response brief is teleworking, and, as noted, he has failed to show that he had a medical need for this accommodation. The Court shall therefore grant summary judgment for defendant on this claim.

*Title VII*

Plaintiff's Title VII claim is that defendant retaliated against him and created a hostile work environment after he testified in August 2011 in a sexual harassment investigation against his supervisor at the time, attorney Thomas Grooms. Plaintiff points to a long list of adverse employment actions and instances of workplace harassment, which he believes were taken in retaliation for his testimony in the Grooms matter: in October 2011 Ball gave plaintiff a "minimally satisfactory" rating on his year-end appraisal; in November 2011 Ball scolded plaintiff for arriving late at work; in November 2011 Ball asked plaintiff why he claimed he was medically restricted from driving when this restriction was not included in the doctor's note he had provided; in November 2011 Ball "knocked on [plaintiff's] door and waved her hands in the air and motioned him out of the office summoning him [sic] that he had to leave the office"; in December 2011 Ball emailed plaintiff that she was unaware of the severity of his eye problem, while in fact, according to plaintiff, he had previously provided Ball with a doctor's note regarding this impairment; on two occasions in December 2011 Ball turned on the fluorescent lights in plaintiff's office "without any humanity or compassion" and "[i]n an act of remarkable cruelty"; in 2011-2012 Ball denied plaintiff's claim for overtime pay[1]; in April 2012 Ball responded to an email from plaintiff in which he requested administrative leave to work on his EEO complaint (regarding Ball's October 2011 rating of

---

[1] This claim was the subject of a separate lawsuit, *Mulvey v. Solis*, 3:14-cv-1027 (M.D. Tenn.), which was settled in April 2013. As noted above, the Court has dismissed plaintiff's FLSA claim.

plaintiff) and Ball copied her response to two individuals who, according to plaintiff, did not need to know about the matter; at plaintiff's mid-year review in May 2012, Ball told plaintiff he was "moving in slow motion and if he picked up a bit of speed he would be well on his way to reaching his performance goals," a statement plaintiff says "was a complete fabrication" because he was working productively; that during his mid-year review plaintiff told Ball his eye condition interfered with his work, but that in an email to plaintiff one week later Ball indicated that plaintiff had told her his arm and eye conditions did not interfere with his work; that during his mid-year review Ball falsely accused plaintiff of referring to other staff as "trailer trash" and pointed out "typos and grammatical errors" in his work while later claiming she had pointed out substantive errors; that in June 2012 Ball told plaintiff his performance was slipping but she did not provide specifics; that in June 2012 Ball assigned plaintiff a project that should have been assigned to another employee; that in June 2012 Ball put plaintiff on a Performance Improvement Plan ("PIP") but, according to plaintiff, she did not provide him with "specific examples of her assessment" or tell plaintiff how to improve; that in July, September, and November 2012 Ball questioned and delayed plaintiff's medical leave requests[2]; that in September 2012 Ball notified plaintiff she intended to suspend him for five days for inappropriate behavior and failing to follow instructions, after the so-called "hallway incident"; and that in December 2012 Ball's supervisor upheld the proposed suspension. Pl.'s Resp. Br. at 16-36.

The legal standards governing Title VII retaliation claims have been articulated by the Sixth Circuit as follows:

---

[2] As noted above, the Court has dismissed plaintiff's FLMA claim. Additionally, the Court notes that plaintiff concedes that "all of his leave requests were approved." Docket entry 81 at 15.

> A plaintiff must now prove that: (1) she engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment. *See Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir.), *cert. denied*, 498 U.S. 984, 111 S.Ct. 516, 112 L.Ed.2d 528 (1990) (outlining previous standard for prima facie Title VII retaliatory harassment case). If and when a plaintiff has established a prima facie case, the burden of production of evidence shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for its actions. *Ibid*. (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). The plaintiff, who bears the burden of persuasion throughout the entire process, then must demonstrate "that the proffered reason was not the true reason for the employment decision." *Ibid*. (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

*Morris v. Oldham Cty. Fiscal Court*, 201 F.3d 784, 792–93 (6th Cir. 2000). Regarding the degree of adverse action or harassment that is actionable, the Supreme Court has stated:

> The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm. As we have explained, the Courts of Appeals have used differing language to describe the level of seriousness to which this harm must rise before it becomes actionable retaliation. We agree with the formulation set forth by the Seventh and the District of Columbia Circuits. In our view, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, "which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Rochon*, 438 F.3d, at 1219 (quoting *Washington*, 420 F.3d, at 662).

> We speak of material adversity because we believe it is important to separate significant from trivial harms. Title VII, we have said, does not set forth "a general civility code for the American workplace." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998); *see Faragher*, 524 U.S., at 788, 118 S.Ct. 2275 (judicial standards for sexual harassment must "filter

> out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing'"). An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience. *See* 1 B. Lindemann & P. Grossman, Employment Discrimination Law 669 (3d ed.1996) (noting that "courts have held that personality conflicts at work that generate antipathy" and "'snubbing' by supervisors and co-workers" are not actionable under § 704(a)). The antiretaliation provision seeks to prevent employer interference with "unfettered access" to Title VII's remedial mechanisms. *Robinson*, 519 U.S., at 346, 117 S.Ct. 843. It does so by prohibiting employer actions that are likely "to deter victims of discrimination from complaining to the EEOC," the courts, and their employers. *Ibid*. And normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence. *See* 2 EEOC 1998 Manual § 8, p. 8–13.
>
> We refer to reactions of a reasonable employee because we believe that the provision's standard for judging harm must be objective. An objective standard is judicially administrable. It avoids the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings. We have emphasized the need for objective standards in other Title VII contexts, and those same concerns animate our decision here. *See, e.g., Suders*, 542 U.S., at 141, 124 S.Ct. 2342 (constructive discharge doctrine); *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (hostile work environment doctrine).

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67–69 (2006).

Applying these standards to the present case, the Court concludes that the vast majority of the instances identified by plaintiff as constituting retaliatory harassment and contributing to a hostile work environment are, in fact, non-actionable "petty slights," "minor annoyances," and "trivial harms." Instances of this nature simply do not support a Title VII retaliation or hostile work environment claim.

Three items identified by plaintiff are not trivial and could support such a claim: the

low year-end review in October 2011, the PIP in June 2012, and the five-day suspension proposed in September 2012 and upheld in December 2012. However, events in mid- to late 2012 are too far removed from plaintiff's August 2011 testimony to be causally connected. The protected activity and the adverse employment action must, to make a prima facie showing of causation, be "very close" or "acutely near" in time. *Lindsay v. Yates*, 578 F.3d 407, 418 (6th Cir. 2009). As plaintiff has no evidence of causation other than temporal proximity, the 2012 incidents cannot be used to support the retaliation claim.

This leaves the October 2011 year-end appraisal as the only adverse action that might support this claim. A copy of this appraisal is attached as an exhibit to plaintiff's deposition. *See* docket entry 68-1, PageID 175-80. Ball gave plaintiff a rating of "exceed" or "meet" as to five of the six areas rated,[3] but she gave him a "need to improve" rating on the sixth. *Id.,* PageID 176. This resulted in an overall rating of "minimally satisfactory," which is the rating applicable to employees who were found to "[n]eed to improve performance for one or more elements." *Id.,* PageID 175. Plaintiff claims, and defendant appears to acknowledge, that this rating prevented plaintiff from obtaining a "within grade" step increase in his salary in April 2012. *See* Pl.'s Dep. at 59.

As plaintiff has stated a prima facie case of retaliation, the burden has shifted to defendant to provide a non-retaliatory explanation for the low evaluation. The category for which Ball gave plaintiff a "need to improve" rating was whether the employee "[e]stablishes and maintains good relationships and high professional reputation with regional and national officials and with the

---

[3] Ball found that plaintiff met all of the substantive requirements of his job and that he exceeded the requirements in the area of "[p]articipates in and conducts settlement negotiations," noting that he "provided valuable assistance to attorneys in negotiating and settling several very large MSHA matters which included multiple dockets." *Id.*, PageID 178.

10

public in general." *Id.,* PageID 179. Ball explained plaintiff's rating in this category as follows:

> During the review period John used inappropriate and disrespectful language in the workplace concerning fellow staff and in communicating with supervisors. He raised his voice in loud, hostile and argumentative manners when addressing supervisors. He failed to treat fellow staff with respect at all times and his attitude was a negative morale factor.

*Id.*, PageID 180. At her deposition, Ball testified that in preparing this evaluation she spoke with Grooms, who had supervised plaintiff for much of the year, and that Grooms indicated that plaintiff had "raised his voice to him several times." Ball Dep. at 53. Ball also testified that on one occasion at the end of August 2011 plaintiff "came into my office . . . and was upset about something, and he started raising his voice and people down the hall commented to me. . . .[H]e was very loud and I told him to kind of calm down." *Id.* at 58-59. Ball also testified that plaintiff had used disrespectful language in emails and in the office. *Id.* at 60, 62-63. She recalled an incident in late August 2011 when she received a message that people from the MSHA office, where plaintiff had been temporarily assigned until mid- to late August 2011, were

> complaining about Mr. Mulvey causing a ruckus. . . . John was not supposed to be there. He was supposed to be in our office, and he's over there yelling and upsetting everybody and they want to know if you can go over and get him to come back to our office. So I left my car and went over there and went upstairs. And Mr. Mulvey was in Tom Grooms' office and I asked him why he was there since he wasn't supposed to be, and he said he was there to get his stuff.

*Id.* at 65.

In response to defendant's summary judgment motion, plaintiff attempts to cast doubt on the legitimacy of Ball's explanation for rating him in need of improvement on the sixth element of the year-end evaluation. Plaintiff points to Grooms' affidavit, in which he averred that he could

11

not recall whether any complaints had been made against plaintiff. *See* docket entry 79-7, PageID 1503. At his deposition, Grooms likewise could not remember whether he had made any complaints to anyone, including Ball, regarding plaintiff. Grooms' Dep. at 36. Plaintiff also notes that Grooms nominated him for a cash bonus for his assistance in settling cases.

Plaintiff has failed to demonstrate the existence of a triable issue as to the legitimacy of defendant's non-retaliatory explanation for rating him "minimally satisfactory" in October 2011. The fact that Grooms could not recall whether he complained about plaintiff to Ball does not rebut Ball's testimony that he did so. Further, plaintiff has not challenged Ball's testimony that he returned to the MSHA office, after having been instructed not to do so, or that he caused a commotion there. Indeed, plaintiff has admitted this behavior "for purposes of summary judgment." Docket entry 81 ¶ 97. Nor has plaintiff denied that he raised his voice while speaking with Ball, who was his supervisor. Nor has plaintiff challenged Ball's testimony regarding his disrespectful emails. On August 19, 2011, plaintiff sent one such email to Ball's supervisor, Stanley Keen, questioning action Keen proposed taking with the words "you have to be kidding me" and referring to his situation as "this crap." Docket entry 68-1, Page ID 443. In an email to a DOL attorney on August 19, 2011, plaintiff referred to another DOL attorney as "lazy." *Id.*, PageID 444. Nor, so far as the Court can determine, has plaintiff denied that he made a sexually inappropriate remark about one of the SOL attorneys to another SOL attorney. Ball Dep. at 62-63; docket entry 68-1, PageID 430. These unchallenged instances of ill behavior and disrespectful tone and word choice justify Ball's "need to improve" rating of plaintiff in the category at issue.

On this record, there is no issue for a jury to decide. Defendant has articulated a legitimate, non-retaliatory explanation for giving plaintiff a "need to improve" rating on the sixth

element of his year-end evaluation. This necessarily led to a "minimally satisfactory" overall rating. As plaintiff has failed to provide evidence which would permit a reasonable jury to disbelieve defendant's explanation, and the other alleged instances of adverse action or hostility are either too trivial or temporally too remote to be actionable, defendant is entitled to summary judgment on this claim.

*Privacy Act*

On April 18, 2017, the Court denied plaintiff's motion for summary judgment on his Privacy Act claim. In that opinion, the Court stated:

> Plaintiff's Privacy Act claim is based on the following allegation:
>
> > 47. On September 20, 2012, Defendant through its agent, Theresa Ball, violated the Privacy Act of 1973 and DLMS - 5 Chapter 200, by knowingly and willfully disclosing Plaintiff's confidential medical information, to include a list of Plaintiff's confidential prescription medicines, to a non-management employee, the SOL Time Keeper, who did not have legal authority, or a need to know, and without the consent of Plaintiff.
>
> > \* \* \*
>
> > 51. Plaintiff alleges that such was an intentional violation of the Act made by a high ranking attorney within the Department of Labor who should have known of the Department's own policies, rules and regulations.
>
> Compl. ¶¶ 47, 51. In his motion for partial summary judgment, plaintiff states that on September 20, 2012, he sent an email to Theresa Ball, the DOL Associate Regional Solicitor, asking for advice as to how he could take a medical leave of absence. In this email, plaintiff stated that his physician had changed one of his medications, and he named the old and new medications. Ball

13

responded as follows, copying the "timekeeper," Naomi Adams, on the response:

> Please send Joyce Adams, our timekeeper, your list of leave, by day and type, claimed this pay period on a Form 71 . She will attempt to determine your estimated leave status. In the future, please send the timekeeper a copy of all leave requests and, as I have reminded you in the past, they should be in the form of a Form 71 and in advance. Make sure it is clear for each day what type of leave you are requesting. Include any leave you are requesting for today. As you know these forms are available on line and you have made use of the on line forms in the past.

Ball's response included plaintiff's email, thereby disclosing the medication names, and the condition for which they had been prescribed, to Adams.

The elements of plaintiff's Privacy Act claim are that "(1) information in the form of a record contained in a system of records; (2) was disclosed by a federal agency; (3) willfully or intentionally; and (4) the disclosure had an adverse impact on the plaintiff." *Whyde v. Rockwell Int'l Corp.*, 101 F. App'x 997, 999 (6th Cir. 2004) (citation and internal quotation marks omitted). Regarding the level of intent required, the Sixth Circuit has stated:

> To recover damages, the plaintiff must show that the agency acted "intentionally" or "willfully," which is a standard "somewhat greater than gross negligence." *White v. Office of Personnel Management*, 840 F.2d 85, 87 (D.C.Cir.1988) (per curiam) (quotations and citation omitted); *see Rose v. United States*, 905 F.2d 1257, 1260 (9th Cir.1990). An agency acts intentionally or willfully "either by committing the act without grounds for believing it to be lawful, or flagrantly disregarding others' rights under the [Privacy] Act." *Wilborn v. Department of Health & Human Servs.*, 49 F.3d 597, 602 (9th Cir.1995) (quotations and citation omitted); *see Andrews v. Veterans Admin.*, 838 F.2d 418, 425 (10th Cir.), *cert. denied*, 488 U.S. 817, 109 S.Ct. 56, 102 L.Ed.2d 35 (1988).

*Mount v. U.S. Postal Serv.*, 79 F.3d 531, 533 (6th Cir. 1996).  In determining whether the disclosure in question was made willfully or intentionally, "a court may consider the entire course of conduct that resulted in the disclosure." *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 551 (6th Cir. 2010).  Further, disclosure is permitted to agency employees "who have a need for the record in the performance of their duties."  5 U.S.C. § 552a(b)(1).

Plaintiff has failed to show his entitlement to summary judgment on this claim.  First, plaintiff has not shown that [B]all's email was "contained in a system of records," as required by the first element of a Privacy Act claim under *Whyde*, *supra*.  A "system of records" is defined as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual."  5 U.S.C. § 552a(a)(5).  In the present case, plaintiff alleges that the email in question was under [B]all's control, not "under the control of any agency" – here, DOL.  One court has specifically held that "office emails" are not part of a "system of records" for Privacy Act purposes.  *Cloonan v. Holder*, 768 F. Supp. 2d 154, 164 (D.D.C. 2011).  Moreover, plaintiff has not shown that [B]all "retrieved" the email in question from any system of records, but only that she responded to plaintiff's email and copied another person.

Even if plaintiff could surmount these obstacles, he has not shown that Hall acted with the requisite willfulness or intent. [B]all avers that plaintiff had on at least fourteen occasions during the year preceding September 20, 2012, sent emails directly to Adams in which he requested leave based on his various medical conditions, and that in those emails he often provided her with detailed information about those conditions and related procedures and appointments.  *See* Ball Decl., Ex. B.  As plaintiff had previously provided such confidential medical information to Adams in connection with leave requests, plaintiff can hardly fault [B]all for forwarding his September 20, 2012, email to Adams, which contained similar information in connection with a request for assistance in seeking medical leave.  Nor, finally, has plaintiff shown that Adams did not have a legitimate need for the medical information, given that he was seeking additional leave for medical reasons, after, according to his email inquiry, he had exhausted all available leave.

The same reasons that prevented plaintiff from obtaining summary judgment require that defendant be granted summary judgment on this claim. Office emails are not a "system of records." Nor did Ball "retrieve" information; she simply responded to plaintiff's email and cc'd the office timekeeper, as the email concerned a request for additional medical leave. Nor has plaintiff produced evidence from which a jury could find that Ball acted with intentional or willful disregard of plaintiff's rights. In short, there is no substance to this claim and nothing for a jury to decide.

*Conclusion*

For the reasons state above, the Court concludes that defendant is entitled to summary judgment on plaintiff's claims under the Rehabilitation Act, Title VII, and the Privacy Act. Accordingly,

IT IS ORDERED that defendant's motion for summary judgment is granted.

s/Bernard A. Friedman
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE
SITTING BY SPECIAL DESIGNATION

Dated: May 4, 2017
Detroit, Michigan